

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Newport News Division**

**JAMES EDWARD GREENHOW,**

       **Petitioner,**

**v.**                                **CRIMINAL ACTION NO. 4:95-cr-39(3)**

**UNITED STATES OF AMERICA,**

       **Respondent.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is James Edward Greenhow's ("Petitioner") motion seeking relief under the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018). ECF No. 723. Having reviewed the motion and the filings, the Court finds that a hearing is not necessary to address Petitioner's motion. For the reasons stated below, Petitioner's motion is **GRANTED.**

### I.    FACTUAL AND PROCEDURAL HISTORY

On August 31, 1995, Petitioner was one of several conspirators named in a 56-count indictment charging Petitioner with various drug and firearm related offenses. ECF No. 4. A 15-count superseding indictment was filed on September 27, 1995. ECF. No. 4. On March 5, 1997, a jury returned a guilty verdict form finding Petitioner guilty of the following:

- Count One: Conspiracy to Distribute 50 Grams or More of Cocaine Base and Marijuana, in violation of 21 U.S.C. 846;

- Count Five: Possession with Intent to distribute Cocaine base, in violation of 21 U.S.C. 841(a)(1);

- Count Six: Distribution of Cocaine base in violation of 21 U.S.C. 841(a)(1);

1

- Count Eighteen: Distribution of Cocaine Base in violation of 21 U.S.C. 841 (a)(1);

- Count Thirty-Four: Distribution of Cocaine Base in violation of 21 U.S.C. 841 (a)(1);

- Count Thirty-Nine: Use or Carry a Firearm While Trafficking in Illegal Drugs in violation of 18 U.S.C. 924(c)(1); ECF No. 352.

In addition, the jury returned a verdict finding the Petitioner guilty, as charged in another Indictment. ECF No. 4. The Petitioner was found guilty of the following:

- Count Five: Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. 922(g)(1).

According to the presentence report, Petitioner led a major drug conspiracy from the early 1980's until he was arrested on September 8, 1995. Petitioner was attributed with a total of 12.5 kilograms of "crack" cocaine and 207.3 grams of marijuana. ECF No. 725 at ¶ 82. Petitioner had a total offense level of 44 and a criminal history category of V. *Id.* at ¶ 152-153. Petitioner's guidelines range was Life.

On June 17, 1997, this Court sentenced Petitioner to life imprisonment on Count One; 36 months of imprisonment on Counts Five, Eighteen, and Thirty-Four, to be severed concurrently; 120 months on Count Six, to be served concurrently; and 60 months on Count Thirty-Nine, to be served consecutively to counts Five, Eighteen, and Thirty-Four. ECF No. 393.

On December 22, 2008, this Court reduced Petitioner's sentence on Count One to 360 months, plus 60 months consecutive on Count Thirty-Nine. ECF No. 603. On January 30, 2017, Petitioner filed a motion to Reduce Sentence. ECF No. 695. On March 31, 2017, the United States of American ("Respondent") filed its response in opposition. ECF No. 699. On July 25, 2017, this Court denied Petitioner's Motion to Reduce Sentence. ECF No. 701.

On May 22, 2020 Petitioner filed motion requesting relief under the FIRST STEP Act. ECF No. 723. Petitioner, through counsel, filed a memorandum in support of his motion on July 10, 2020. ECF. No. 727. The Government filed a response without opposition to the motion on July 13, 2020. ECF No. 728. Having been fully briefed, this matter is now ripe for judicial review.

## II.   LEGAL STANDARD

When a court imposes a sentence of imprisonment, that is considered a final judgment on the matter. 18 U.S.C. § 3582(b). It is well established that "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (citing *United States v. Layman*, 116 F.3d 105, 109 (4th Cir. 1997)). Under statutory law, a "court may not modify a term of imprisonment once it has been imposed" except in limited circumstances, including "to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B). The FIRST STEP Act is a statute that expressly permits courts to modify a term of imprisonment. *See United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019), as amended (Nov. 21, 2019).

## III.   DISCUSSION

Our analysis of the FIRST STEP Act begins with the historical background of the federal sentencing scheme as it relates to those convicted of cocaine base, or "crack cocaine" offenses. On October 12, 1984, Congress passed the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-47, 98 Stat. 1976 ("CCCA"), Pub.L. 98-473, 98 Stat. 2068, which included two important statutory penalty schemes that are relevant here. First, the CCCA included the Sentencing Reform Act of 1984 ("SRA") which created the United States Sentencing Commission. Pub. L. No. 98-473, Tit. II, Ch. II, 98 Stat. 1987. The Sentencing Commission established the Federal

Sentencing Guidelines, which under 18 U.S.C. § 3553(b)(1) became mandatory. *See* United States Sentencing Guidelines, § 1A1.1. Second, the CCCA included the Controlled Substances Penalties Amendments Act of 1984, which for the first time made punishment dependent upon the quantity of the controlled substance involved. Pub. L. 98-473, Tit. II, Ch. V, 98 Stat. 2068; *see Chapman v. United States*, 500 U.S. 453, 461 (1991).

Two years later, Congress enacted the Anti-Drug Abuse Act of 1986 ("ADAA"), Pub. L. 99-570, § 1002, 100 Stat. 3207, which added mandatory minimums to certain offenses involving specific weights of certain controlled substances. Notably, the ADAA contained a 100-to-1 ratio that treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 96 (2007). For example, an individual who was convicted of a drug trafficking offense involving only 50 grams or more of cocaine base or "crack cocaine" was subjected to the statutory range of 10 years to life, the same as someone who was convicted of a drug trafficking offense involving 5 kilograms of powder cocaine. *See* 21 U.S.C. § 841 (b)(1)(A)(ii), (iii) (1993). This created a sentencing disparity which had the effect of promoting "unwarranted disparity based on race," and punishing a low-level dealer who had crack cocaine harsher than a major supplier of powder cocaine. *Kimbrough,* 552 U.S. at 98. This federal sentencing scheme became heavily criticized.

Nearly two decades later, the federal sentencing scheme penalizing drug offenders underwent significant changes. Guideline sentences were no longer mandatory, but advisory. *United States v. Booker*, 543 U.S. 220, 244–45 (2005). And a sentencing judge could find that "a within-Guidelines sentence is greater than necessary to serve the objectives of sentencing" and "consider the disparities between the Guidelines' treatment of crack and powder cocaine offenses." *Kimbrough*, 552 U.S. at 87. By 2010, Congress passed the Fair Sentencing Act of

2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, to reduce, though not eliminate, the sentencing disparities between powder and crack cocaine. The FSA not only lowered the crack-to-powder ratio from 100-to-1 to 18-to-1 but also eliminated mandatory minimum for "simple possession" of crack cocaine. FSA § 3, 124 Stat. at 2372; *see United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013).   Under the FSA, an individual who trafficked 50 grams of crack cocaine would now be subjected to a five-year mandatory minimum, the same as someone who trafficked 500 grams of powder cocaine. *See* 21 U.S.C. § 841(b)(1)(B)(iii).

The penalty provisions of the FSA however, only applied to crack cocaine offenders sentenced on or after August 3, 2010, even if an offense was committed before that date. *Dorsey v. United States*, 567 U.S. 260, 267-68 (2012).   Those sentenced prior to the FSA's enactment, could not benefit from the reduction in sentencing disparities.   The Sentencing Commission promulgated Amendments 750 and 782 which lowered the base offenses levels associated with different amounts of crack cocaine. *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). These guideline amendments also applied retroactively which offered those sentenced prior to the enactment of the FSA an opportunity for relief under 18 U.S.C. § 3582(c)(2), only if their guidelines range was lowered by any of the amendments. *Black*, 737 F.3d at 286-87; *Wirsing*, 943 F.3d at 179.   But for those who were sentenced prior to August 3, 2010 for crack cocaine offenses and whose guidelines range was not lowered as a result of amendments to the guidelines, their sentences were still defined by the 100-to-1 crack to powder cocaine sentencing disparity.

Then came the FIRST STEP Act.   On December 21, 2018, Congress passed the FIRST STEP Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which made certain provisions of the FSA retroactive.   The   FIRST   STEP   Act   authorizes   courts   to   "on   motion   of   the

5

defendant...impose a reduced sentence" for a criminal defendant who (1) was convicted of a statute, for which the penalties were modified by Sections 2 or 3 of the FSA; (2) if the offense was committed before August 3, 2010; and (3) if the defendant did not already receive a reduction under the FSA or the FIRST STEP Act. *See* FIRST STEP Act, § 404, 132 Stat. 5194, 5222. Thus, all those who were denied relief under the FSA, may now petition the courts for relief under the FIRST STEP Act. However, the decision to grant a sentence reduction is left to the court's discretion. *Id.* at § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). In determining whether to grant a petitioner's request for relief, a court must decide (i) whether a petitioner is eligible for a sentence reduction under the FIRST STEP Act; (ii) whether the Court will exercise its discretion to grant relief; and (iii) if applicable, what relief should be granted.

i.   *Eligibility*

Petitioner is eligible to move for relief under the FIRST STEP Act. Eligibility under § 404 of the FIRST STEP Act depends on whether a Petitioner was convicted of a covered offense. *See Wirsing*, 943 F.3d at 186 (noting that all defendants serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the FIRST STEP Act are eligible to move for relief); *see also United States v. James Eddie Palmer*, 2:93-cr-90, ECF No. 271 at 4 (E.D. VA., Sept. 10, 2019)(noting that a petitioner's eligibility for relief is "not voided by the fact that he was also attributed with conspiring to distribute powder cocaine); *United States v. Anthony Moore*, 2:02-cr-225, ECF No. 414 (E.D. Va., Sept. 20, 2019)(finding petitioner who was convicted of Conspiracy to Distribute and Possess with Intent to Distribute 50 Grams or More of Cocaine Base and 1 Kilogram or More of Heroin, in violation of 21 U.S.C. § 846, eligible for relief).

Eligibility under § 404 does not depend on the drug amount in Petitioner's Presentence Report ("PSR") nor does it depend on whether Petitioner's guidelines range will change. *See United States v. Pride*, 2019 WL 2435685, at *4 (W.D. Va. June 11, 2019).

Eligibility under § 404 is simple. *See Wirsing*, 943 F.3d at 186 (noting that there is no indication that Congress intended a complicated and eligibility-limiting determination at the eligibility stage of the analysis). If an individual (1) was convicted under a statute for which the penalties were modified by § 2 or § 3 of the FSA; (2) committed the offense before August 3, 2010; and (3) did not already receive a reduction under FSA or § 404, then that individual is eligible to move for relief under the FIRST STEP Act. *Id.*

Here, Petitioner was convicted of several crack cocaine offenses: Conspiracy to Distribute 50 Grams or More of Cocaine Base and Marijuana in violation of 21 U.S.C. 846 (Count One); Possession with Intent to distribute Cocaine base, in violation of 21 U.S.C. 841(a)(1) (Count Five); and Distribution of Cocaine base in violation of 21 U.S.C. 841(a)(1) (Counts Six, Eighteen, and Thirty-Four). ECF No. 725. Petitioner was therefore convicted of covered offenses, a statute for which the penalties were modified by § 2 or § 3 of the FSA. *See Wirsing*, 943 F.3d at 186. Petitioner committed the offenses in 1995, long before August 3, 2010. ECF No. 725. And Petitioner has not previously received a reduction under the FSA or § 404. Thus, Petitioner is eligible to move for relief under the FIRST STEP Act.

*ii.   Discretion*

While Petitioner is eligible for a reduced sentence, it is entirely within the Court's discretion whether to grant any relief to Petitioner. Section 404(c) of the FIRST STEP Act provides that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Courts use different approaches when deciding whether to

exercise its discretion to grant any relief. *See United States v. Rose*, 379 F. Supp. 3d 223, 231 (S.D.N.Y. 2019) (noting that some courts consider post-sentencing rehabilitation, while others re-evaluate § 3553(a) factors); *United States v. Shields*, No.1:08-CR-314, 2019 WL 3003425, at *7 (M.D. Pa. July 10, 2019); *Pepper v. United States*, 562 U.S. 476, 491 (2011).

The Government does not oppose that this Court exercise its discretion in reducing the Petitioner's motion for sentence reduction on Count 1 to 240 months. The Government also does not oppose that this Court reduce Petitioner's term of supervised release to correspond with the new-applicable statutory maximum 40 years. ECF No. 728.

When determining whether to exercise its discretion, the Court not only considers the § 3553(a) factors and evidence of post-rehabilitation, but also considers the purpose of the FIRST STEP Act. The purpose of the FIRST STEP Act is to allow defendants who were previously convicted and sentenced harshly for crack cocaine offenses the opportunity to benefit from the FSA which sought to alleviate the harsh sentencing disparities between those convicted of crack cocaine and those convicted of powder cocaine. It also sought to benefit those individuals who also could not obtain relief under any amendments to the guidelines. Importantly, the FIRST STEP Act was passed after Congress considered the many changes to the federal sentencing scheme since individuals like Petitioner were sentenced. *See e.g., Booker*, 543 U.S. at 220 (holding that the sentencing guidelines are no longer mandatory, but advisory).

Petitioner was convicted and sentenced for multiple crack cocaine offenses. Petitioner had a mandatory guideline range of life for Count One, which was a crack cocaine offense. Given that the guidelines were mandatory, Petitioner was sentenced to life on Count One, which charged Petitioner with Conspiracy to Distribute 50 Grams or More of Cocaine Base and Marijuana. Because Petitioner committed the offenses long before August 3, 2010, Petitioner

could not benefit from the reduction in sentence disparities offered by the FSA. Thus, given the circumstances in this case, the absence of Government opposition, and considering the § 3553 factors including post-conviction behavior, this Court will exercise its discretion to resentence Petitioner.

iii.    *Relief*

As a threshold matter, when imposing a new sentence under the FIRST STEP Act, this Court has the discretion to impose a new sentence on the other counts as well. Because "a sentence is not merely the sum of its parts," and district courts impose "sentence[s] by considering all of the relevant factors as a whole," when a new sentence is imposed, a whole sentence on all counts should be imposed. *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). And Section 404(b) does not limit a court's discretion to reduce a sentence only on the covered offense. Thus, since Petitioner is eligible for a new sentence on his crack cocaine offenses, the Court may impose a new sentence on his other counts as well or else risk "unbund[ling] the entire sentence package." *Id.*

In re-sentencing Petitioner, the Court must craft a sentence that is sufficient but not greater than necessary to fulfill the purposes of sentencing. 18 U.S.C. § 3553(a). At every sentencing, a court must consider the totality of the circumstances, and therefore, the Court will also consider post-conviction behavior. *Cf. Pepper v. United States*, 562 U.S. 476, 490 (2011) (holding that a district court may consider "evidence of a defendant's rehabilitation since his prior sentencing" to support a downward variance from the guidelines after that initial sentence has been set aside on appeal); *United States v. Davis*, 679 F.3d 190, 195–96 (4th Cir. 2012) (holding that a "district court can consider other sentencing factors" when reducing a sentence after granting a Rule 35 motion).

The Court first begins by considering Petitioner's offense conduct relevant to his convictions. From 1984 through 1995, Petitioner led a massive drug conspiracy where he distributed 12.5 kilograms of "crack" cocaine and 207.3 grams of marijuana. ECF. No. 725. Petitioner's conspiracy included many of his family members who were also convicted in the case. To traffic drugs throughout the United States, Petitioner used different means of transportation. Petitioner also possessed several weapons throughout the conspiracy.

Prior to his conviction for the conspiracy, Petitioner was no stranger to the criminal justice system. His criminal record includes juvenile convictions for breaking and entering, grand, larceny, and burglary to name a few. His adult convictions include burglary, larceny, and assault and battery, possession of a firearm, and possession of marijuana and cocaine. Petitioner was 52 years of age when he was sentenced to prison for the drug conspiracy.

Over the last 23 years, Petitioner was only sanctioned for disciplinary incidents twice: once in 1998, shortly after he was sentenced, and another in 2008. For over 12 years, he has been incident free. Moreover, Petitioner participated in various education courses, worked, and participated community activities. Petitioner has also maintained close relationships with this family and friends. Thus, based on the record, Petitioner has demonstrated rehabilitation while in prison. Accordingly, Petitioner moved down security levels and was recently released to community confinement under the CARES Act given his age (75), health concerns, and the rapid spread of the COVID-19 virus throughout the BOP facilities. Petitioner no longer presents a risk to the community and is re-establishing himself as a productive member of society. He is currently at home while still under the supervision of the Bureau of Prisons.

In 2008, the Court reduced Defendant's sentence on Count One to 360 months of imprisonment, plus 60 months consecutive on Count Thirty-Nine. ECF No. 603. Count One

carries a statutory penalty of twenty (20) years and the Defendant has a statutory exposure of five (5) years consecutive with Count Thirty-Nine for a total of twenty-five (25) years to serve. Defendant has already served twenty-three (23) years in prison.

Based on all the § 3553(a) factors and evidence of Petitioner's evidence of rehabilitation since the original sentence and the absence of opposition from the Government, the Court finds a sentence of **Time Served** is sufficient but not greater than necessary to serve the purpose of the sentencing.

## IV. CONCLUSION

Based on the foregoing, Petitioner's motion is **GRANTED**. The Court now imposes a total sentence of **Time Served**. Upon final release from the Bureau of Prisons, the Defendant shall be on **supervised release** for a term of **three years**, with the standard conditions of supervised release.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Newport News, Virginia
September / 5 , 2020

Raymond A. Jackson
United States District Judge

11